## Comer *v.* Light, Administrator, et al.

[No. 21,808. Filed January 11, 1911. Rehearing denied March 15, 1911.]

1. Wills.—*Remainders.*—*Execution.*—*Equitable Conversion.*—Under a will devising to testator's widow a life estate in his real estate, remainder, upon his widow's death, to be sold by his executor, and the proceeds "to be divided equally between [testator's] sons and daughters," the widow of a son who predeceased the life tenant has a right not only to her statutory allowance of $500 (§2786 Burns 1908, §2269 R. S. 1881) out of the proceeds, but also to one-third of the gross amount of the sale price of her husband's share, free from the claims of his creditors, the doctrine of equitable conversion not applying. pp. 369, 374, 376, 377.

2. WILLS.—*Remainders.—Possession.—Executors.*—Where a testator devised lands to his widow, remainder to be sold by his executor at his widow's death, and the proceeds distributed to testator's children, such executor is not entitled to possession until the death of the life tenant, and is not required to account for the rents and profits. p. 372.

3. WILLS.—*Sales by Executors.—Stamp Tax.*—A stamp tax, collectible from the sale, mortgage, or other disposition of any real or heritable estate directed to be sold, is collectible where a testator directs his executor to sell the remainder after expiration of the life estate granted, though the beneficiaries take the property without a sale thereof. p. 373.

4. ESTATES.—*Chattels Real.—Character of.—Judgment.—Liens.*— A chattel real is an interest annexed to, or growing out of, real estate, such as a term of years, having the character of immobility, ordinarily passing to the personal representative and not to the heir, and a judgment against the owner constitutes a lien thereon (§635 Burns 1908, §608 R. S. 1881). p. 375.

5. WILLS.—*Remainders.—Conversion.—Execution.*—Under a will devising to testator's widow a life estate, remainder to be sold by the executor at the widow's death, and the proceeds divided among testator's children, the interest of a child is subject to the lien of a judgment against such child (§635 Burns 1908, §608 R. S. 1881), such interest not being vendible on execution as personal property, nor as a debt or thing in action (§766 Burns 1908, §724 R. S. 1881), nor could it be levied upon as money and returned as money collected (§762 Burns 1908, §720 R. S. 1881), but should be sold as real estate. p. 375.

6. DESCENT AND DISTRIBUTION.—*Equitable Interests.—Widows.*— Widows inherit the same interests in the equitable as in the legal estates of their husbands. p. 376.

7. WILLS.—*Life Estates.—Remainders.—Sales.—Election.*—Where a will devises to testator's widow a life estate, remainder to be sold by the executor and the proceeds thereof distributed among testator's children, such children may elect to retain the remainder without a sale thereof. p. 376.

8. JUDGMENT.—*Lien of.—Beneficiaries under Will.—Claims against Estates.*—Under a will devising a life estate to the testator's widow, remainder to be sold by the executor at the widow's death, and the proceeds distributed among testator's children, a judgment against a child of such testator who predeceased the life tenant, constitutes a lien upon such child's interest, and, where no sale has been made thereunder, may be filed as a claim against such child's estate, constituting a claim of the fifth class (§2901 Burns 1908, §2378 R. S. 1881). p. 377.

9. DESCENT AND DISTRIBUTION.—*Widows.*—A widow's claim to her one-third interest in her deceased husband's real estate (§3014

Burns 1908, §2483 R. S. 1881) cannot be reduced by the claims of her husband's creditors; and her statutory allowance of $500 (§2786 Burns 1908, §2269 R. S. 1881) can be reduced only by the amount necessary for the expenses of administration, the last sickness, and the funeral of decedent, and then only where no other funds are available for such purposes.  p. 377.

10.  WILLS.—*Estates.* — *Equitable Conversion.* — The doctrine of equitable conversion applicable to the law of wills requires, in the absence of other intervening rights, that the property bequeathed or devised shall be treated as having been converted, at the taking effect of the will, to the kind of property designated in the will.  p. 378.

From Probate Court of Marion County (8,534); *Frank B. Ross,* Judge.

Final report by Robert C. Light, as administrator of the estate of Jacob Cruse, deceased, to which Alfred W. Comer and others file exceptions. From the judgment rendered, said Comer appeals. Transferred from Appellate Court under §1394 Burns 1908, subdv. 2, Acts 1901 p. 565, §10. *Reversed.*

*Walter L. Carey,* for appellant, and for appellee Sarah J. Cruse.

*William Bosson,* for appellee Robert C. Light personally, and as administrator of the estate of Jacob Cruse, deceased.

*Emsley W. Johnson* and *Orval E. Mehring,* for appellee George W. McWhorter.

MYERS, C. J.—This is an appeal from a judgment overruling exceptions to the final report of an administrator, and approving such report. The question for determination arises upon the construction of a will, and the order 1. of distribution under it, as affecting the insolvent estate of a deceased beneficiary thereunder. Henry Cruse died December 15, 1903, leaving a will, the material portion of which is as follows:

" I will and bequeath to my beloved wife, Eliza J. Cruse, all money and personal property of every description of which I may be possessed at my death, together with all my real estate situate in Hamilton

county, Indiana [describing it specifically], to have and to hold and have the full use and control of the same so long as she shall live; and at the death of my said wife all of said personal property remaining, and all of said real estate shall be sold by my executors, and $500 from the proceeds thereof paid to my grandson, Charles L. Cloe, the remainder to be divided equally between my sons and daughters [naming them, of whom Jacob Cruse was one]."

Appellant on October 14, 1905, recovered a judgment against Jacob Cruse, son of Henry Cruse. On December 4, 1905, appellee McWhorter recovered a judgment against Jacob Cruse. Both judgments were in renewal of former judgments. A transcript of each judgment was filed in the office of the clerk of the county in which the real estate of which Henry Cruse died seized was situate. The appellant's judgment became a lien October 16, 1905, and the other judgment, in December, 1905. No execution was ever issued upon either judgment, and no further steps were taken respecting them, until after the death of Jacob Cruse, when, in the form of judgments, they were filed and allowed as claims against his estate. Jacob Cruse died in Marion county, on November 15, 1907, intestate as to all his property, and appellee Light was appointed administrator of his estate June 8, 1908.

Eliza J. Cruse, widow of Henry Cruse, and mother of Jacob Cruse, died in April, 1908. Jacob Cruse at his death left a widow, appellee herein, and three children. Upon the death of Eliza J. Cruse, the executors of the will of Henry Cruse, under the provisions of the will, sold the real estate of which he died seized, and from the proceeds of the sale, $1,155.33 came into the hands of appellee Light, as administrator of the estate of Jacob Cruse, who settled the estate as insolvent. He paid the widow $500 for her statutory allowance and also paid the expenses of administration, leaving a balance of $555.33 for distribution.

Appellee Sarah J. Cruse, widow of Jacob Cruse, claimed that she was entitled to an amount equal to one-third of

the proceeds of the sale of the real estate free from claims of creditors, and appellants Comer and McWhorter claimed that they were entitled to satisfaction of their judgment claims in full, as against the costs and expenses of administration, and all other claims except the widow's $500. These respective contentions were denied, and the administrator was directed to prorate the fund among the creditors, including Comer and McWhorter, and excluding the widow of Jacob Cruse, upon the theory that the fund was to be treated as personal property from the date of the death of Henry Cruse, and that the judgments were general claims.

In the case of *Doe* v. *Lanius* (1852), 3 Ind. 441, it was held that as against the executors under a will directing sale of real estate within one year after the testator's death, and division of the proceeds among named persons, the right of possession and the legal title, until the sale, were in the beneficiaries.

In the case of *Rumsey* v. *Durham* (1854), 5 Ind. 71, it was held that under a will directing a sale of real estate after the termination of the life estate, or the marriage of the widow, such direction of a sale operated as a conversion into money, and that such devise should be treated as if the donation had been in money. The real question in that case was whether there was such a vested interest in a parent who had died after the death of the testator, and before the death of the life tenant, as to let in the child of such parent to inherit; and the equitable rule of conversion, and vesting, at the date of the death of the testator, was invoked in justice to such grandchild, upon equitable considerations. This case was followed in the case of *Wilson* v. *Rudd* (1862), 19 Ind. 101, holding that one of the named beneficiaries under the will took a vested interest in the real estate, which was subject to levy and sale; but it will be seen that in that case there was a specific devise of a share in the real estate under the fourth clause of the will, and the same is true of *Heilman* v. *Heilman* (1891), 129 Ind. 59. The case

of *Wilson* v. *Rudd, supra,* goes further than the case of *Doe* v. *Lanius, supra,* warrants. That case did not involve the question of title to the realty, except upon the ground that such a vested interest was superior, on the question of possession, to the right of the executor.

In the case of *Simonds* v. *Harris* (1884), 92 Ind. 505, it was held, under a will directing a sale after the termination of a life estate and division of the proceeds, that a share in the land was subject to attachment, which followed the proceeds after sale, following the case of *Wilson* v. *Rudd, supra,* but going further than the facts in that case justify.

The case of *Ballenger* v. *Drook* (1895), 101 Ind. 172, was one where the interest of a distributee of the proceeds after sale was held to constitute such an interest as was subject to the lien of a judgment, and that the lien took preference in the distribution of the proceeds over the distributee and his grantee. This case followed the cases of *Simonds* v. *Harris, supra,* and *Brumfield* v. *Drook* (1885), 101 Ind. 190, involving the same will in which it was held that the title to the land before sale was not in abeyance, but in the testator's children, the beneficiaries under the will. This is likewise held in the cases of *Indiana R. Co.* v. *Morgan* (1904), 162 Ind. 331, and *Myers* v. *Carney* (1908), 171 Ind. 379.

In the case of *Koons* v. *Mellett* (1890), 121 Ind. 585, 7 L. R. A. 231, it was held that a judgment was a lien upon lands which had been directed to be sold, and followed the proceeds.

2. A fair test of the question is whether the executor, during the interim before sale, would be compelled to account for the devised realty; or, if liable to account, whether he would he liable to account for the rents and profits of the realty, or account for it as money. He certainly would not be liable to account as for money, because the amount for which to account could not be known, and he should not account for rents and profits of real estate, because he has no right of possession.

The fiction of law, that under a simple direction to sell and divide the proceeds, conversion into money will be held in equity to have taken place at the date of the death of the testator, and that equity will treat that as done which is directed to be done, and it will be treated as that species of property into which it is directed to be converted, is grounded upon equitable considerations, and is interposed for the purpose of carrying out the intention of testators so far as that can be done within the rules of law, and generally for the purposes of equality, and doing equity between heirs or next of kin, where no other rights intervene, but it has never been understood that a testator can change realty to personalty, or *vice versa,* by the mere declaration that it shall be one or the other, and an examination of the cases will disclose that the fiction of constructive conversion is grounded upon the proposition that, in the absence of intervening interests or rights, the testator's intention, as it affects the beneficiary, shall control; but when the question as to possession before sale is one between the beneficiary and the trustee of a mere power of sale, the right of the beneficiary is superior; or if the rights of third persons attach or intervene before sale, the fiction is destroyed. For example, before sale, it can scarcely be questioned, in this State at least, that the right of possession is in the beneficiary; that is, that the interest vests in him; if this were not so, the property, and necessarily the right to possession and control thereof, would go to the personal representatives, and the executor would be required to account for it as personalty, which can hardly be claimed. *Matter of Hunter* (1877), 3 Redf. Surr. 175.

The question has frequently arisen under the Crown's claim to legacy duty under the stamp act, providing that "money to arise from the sale, mortgage or other disposition of any real or heritable estate, directed to be sold, mortgaged or otherwise disposed of," shall be subject to duty. Under this act, it is held that

when real estate is directed to be sold the duty attaches, even though the beneficiary elects to take the land without sale, or where the trustee has an option to sell, and actually sells; but the duty does not attach, if he does not sell. If the power is given only for reinvestment in land, or the variation of securities, or for raising debts, and legacies or other prior charges, the duty is not payable, whether the property is sold or not, although the beneficiaries after the sale elect to take the property as money. Nor does the duty attach where there is a sale made under the order of a court under its general jurisdiction, though it will attach if the trustee is compelled by a court to exercise a power of sale under a will. 1 Jarman, Wills (6th ed.) 591.

The cases discussed hold that the fiction of conversion as between himself and the beneficiary attaches to the status which a testator fixes upon a property or fund at the time the will becomes operative; and, treating as an accomplished fact, for all the purposes of the will, the act to be done in the future, hold that equity intervenes to require that an interest, directed to be sold and the proceeds distributed, shall be treated as a conversion as of the date of the testator's death. It would be unreasonable that the condition and character of the property as between the testator and the beneficiaries should depend upon the act of the executor, when no such power is reposed in him. These reflections seem to us to show the distinction between the cases before cited, and another line of cases in this State, and in other states, in which, under the facts in those cases, conversion is held to have taken place as of the date of the death of a testator. *Rumsey* v. *Durham, supra; Nelson* v. *Nelson* (1905), 36 Ind. App. 331; *Clark* v. *Worrall* (1904), 33 Ind. App. 49; *McClure's Appeal* (1872), 72 Pa. St. 414; *Hammond* v. *Putnam* (1872), 110 Mass. 232; *Stagg* v. *Jackson* (1848), 1 N. Y. 206.

But even in states where the rule is broadly applied, the doctrine is qualified to the extent that conversion does not

take place until the event transpires when the conversion should be made, and the property reaches the beneficiary in his absolute right in the character impressed upon it. *Holland* v. *Cruft* (1855), 3 Gray 162; *Holland* v. *Adams* (1855), 3 Gray 188; *Savage* v. *Burnham* (1858), 17 N. Y. 561; *Mansbach* v. *New* (1901), 68 N. Y. Supp. 674, 58 App. Div. 191; *Shumway* v. *Harmon* (1875), 6 Thomp. & C. 626; *Sweezy* v. *Thayer* (1852), 1 Duer 286.

The character of interest of Jacob Cruse approaches a chattel real more nearly than any other. A chattel real at common law was an interest annexed to, or growing

4.   out of, real estate, as a term of years, having the character of immobility, which denominated them real, while other chattels proper are movable, but they were regarded as personal property, and went to the personal representative upon death, and not to the heir. Schouler, Personal Property (3d ed.) §20.

Prior to 1843 a term of years was held to be personal property, and the subject of sale upon execution issued by a justice of the peace. *Barr* v. *Doe* (1842), 6 Blackf. 335. But under the revised statutes of 1843 (R. S. 1843 p. 454, §3) and under the present statute (§635 Burns 1908, §608 R. S. 1881), judgments are liens upon chattels real, and they are sold as real estate. *Hyatt* v. *Vincennes Nat. Bank* (1885), 113 U. S. 408, 5 Sup. Ct. 573, 28 L. Ed. 1009; *Putnam* v. *Westcott* (1821), 19 Johns. *73; *McLean* v. *Rockey* (1843), 3 McLean 235, Fed. Cas. No. 8,891; *Gunn* v. *Sinclair* (1873), 52 Mo. 327. The interest of Jacob Cruse has been held to be vested and the subject of a judgment lien, levy and sale, the same as in case of real estate proper. *Koons* v. *Mellett, supra.*

A fair test of its character relates to the rights of a wife on the making of such sale prior to the termination of the

5.   life estate. Would a sale in the lifetime of Jacob Cruse have left any interest in his wife, and subsequent widow? Manifestly it could not be sold as personal property, for the

delivery of possession is wholly impossible; neither could it be levied upon as money and returned without sale under §762 Burns 1908, §720 R. S. 1881, or as a debt or thing in action under §766 Burns 1908, §724 R. S. 1881.

It is held under §3052 Burns 1908, §2508 R. S. 1881, with respect to sales of the real estate of a husband, and the vesting of a wife's interest, that the section applies to equi-

6. table interests as well as to legal ones. *Whitney* v. *Marshall* (1894), 138 Ind. 472; *Shelton* v. *Shelton* (1883), 94 Ind. 113; *Keck* v. *Noble* (1882), 86 Ind. 1; *Ketchum* v. *Schicketanz* (1880), 73 Ind. 137. The statute of descents provides that she shall take, in equitable interests of the husband, as well as legal estates. §3029 Burns 1908, §2491 R. S. 1881.

It is then an interest in real estate, or an interest in money. Suppose that Jacob Cruse had survived his mother, and he and all the other beneficiaries under the will of Henry

7. Cruse, being *sui generis*, had elected to take the property in kind, there can be no doubt that they could have done so, and in that event a legal estate would clearly have vested in them in fee simple. If sale had been made prior to the death of the widow on the judgments of appellants and McWhorter, the sale would have related back. to the date of the judgments, and sale would have been made as real estate is sold, and with the incidents of the sale, and with the effect of a sale of real estate, as an equitable interest. Shall his widow's interest be less than it would have been in that contingency? The law favors a liberal con-

1. struction of such statutes, and we think it must be held, under our decisions, that it was an equitable interest or estate. Or suppose that the executors under the will had failed to make the sale or delayed in making it and in dividing the proceeds, could there be any doubt that the administrator of Jacob Cruse's estate could have had partition and sale under §2849 Burns 1908, §2333 R. S. 1881? This being true, the wife was entitled to $500 and one-third of

the real estate, or the proceeds free from all demands of creditors.

We come to the claims of Comer and McWhorter, which are held to be liens. In the absence of a sale under them, they were only general liens, and in the order of distribution take their place under the statute as claims of the fifth class, whether the estate be solvent or insolvent, according to their priority under §2901 Burns 1908, §2378 R. S. 1881. *Snyder* v. *Thieme & Wagner Brewing Co.* (1910), 173 Ind. 659; *Hildebrand* v. *Kinney* (1909), 172 Ind. 447.

The widow's one-third of the real estate cannot be reduced by the claims of creditors, and her statutory allowance of $500 can be reduced only by the amount necessary to defray the expenses of administration, last sickness and funeral of the deceased husband and then only when no other funds are available for such purpose. §§2786, 2901, 2957 Burns 1908, §§2269, 2378 R. S. 1881, Acts 1883 p. 163.

The judgment is reversed, with instructions to the court below to enter judgment, awarding to Sarah J. Cruse, out of the money in the hands of the clerk for distribution, a sum equal to one-third of the gross fund received from the sale of the real estate, and after deducting the expenses of administration and of last sickness and funeral from the residue, to apply the remainder to the payment of the claims of appellant Comer and appellee McWhorter, as lien holders of the fifth class, under §2901, *supra*, and according to priorities under §2957, *supra*, and §2958 Burns 1908, §2435 R. S. 1881, construed together; and if more than sufficient to pay them in full, to distribute the remainder pro rata among claimants of each subsequent class under §2901, *supra*.

## ON PETITION FOR REHEARING.

MYERS, C. J.—A petition for a rehearing has been filed in this case, urging that if the doctrine of *Rumsey* v. *Durham* (1854), 5 Ind. 71, *Clark* v. *Worrall* (1904), 33 Ind. App. 49, and *Nelson* v. *Nelson* (1905), 36 Ind. App. 331, is not to be regarded by the profession as sound in principle, said cases should be formally overruled by this court in this case.

We pointed out in the original opinion that the real question in the case of *Rumsey* v. *Durham, supra,* was as to when the interest vested, and whether there was such an interest in a parent who was a beneficiary under a will, subject to a life estate, that upon her death her child should take an interest, and that the doctrine of equitable conversion into money, as of the date of the death of the testator, was invoked upon equitable considerations to let in such child. This doctrine has been invoked in later cases in this State, not upon the grounds of its being a strict rule of construction, but to produce equitable results, and this, coupled with the general doctrine of the law favoring the vesting of interests, and in carrying out the intent of testators with respect to those who are the intended beneficiaries, will be found to be the basis of that line of cases. This accounts for the doctrine of many of the cases upholding or declaring the rule of equitable conversion, by which all that is really meant is, that where no other rights intervene, or are asserted, the property will be treated for the purpose of carrying out the terms of the will, as that character of property into which it is directed to be converted, not because it is such property, but because it is directed to be so treated, and dealt with, in carrying out the intention.

The question was not even indirectly involved in the case of *Clark* v. *Worrall, supra,* and the statement there made is only of the general rule without any application to the case.

The case of *Nelson* v. *Nelson, supra,* though following the case of *Rumsey* v. *Durham, supra,* as to the general doctrine

of equitable conversion, distinctly holds, as the main point in the case, that the beneficiaries have such an interest before the title is devested by the power of sale under the will that it is the subject of disposition by them, and of course upon the same analogy is the subject of levy and sale to the extent of fastening upon the proceeds of the sale. We point out the distinctions in those cases for the purpose of showing that they are not at variance with our holding in the original opinion in this case. It is said that if there is no contest of the will, or if the beneficiaries themselves agree to take the property in kind, there need be no execution, and the agreement would override the intent of the testator. If such an agreement might be effective, that would only enforce our position, that where, through voluntary action on the part of the beneficiaries, or through involuntary acts or proceedings against them, the conditions are changed, or other rights intervene, the rule of equitable conversion does not apply to the extent of preventing or cutting off all rights; but we are relegated to other rules of law or statutes in determining rights, which, but for such interruption or intervention would permit the flow of the current, as the testator designed. In other words, as between the testator and the specific beneficiary, and so long as no other rights attach or intervene, the rule of equitable conversion attaches, but when the rights of third persons intervene or attach, they must attach to the property as of that character that exists at the time, subject to being changed in form by the execution of the power. That is the doctrine of our cases. If this were not so, the mere fiat of a testator could so change property as to put it wholly beyond the reach of deserving creditors and possibly heirs, and defeat all just expectations; while under the rule as we understand it, the established rules of law and the statutory provisions are operative as to descents, liens or general debts, and the just rights of all protected,

but for the purpose of accomplishing equitable results, the rule of equitable conversion will be applied to carry out the intention of the testator where other rights have not intervened.

The petition for a rehearing is overruled.